Good afternoon, your honors. I'm Gilbert Levy representing the Petitioner Appellant Theodore Washington. I would like to reserve five minutes of my time. Civil Rule 60b-6 is the ultimate safety valve to prevent injustice. This case is about injustice. My client's two co-defendants have obtained relief on essentially on facts that are essentially no different than the facts in my client's case. My client remains on death row and faces execution because his habeas counsel missed the appellate deadline by a single day in a situation which resulted in absolutely no prejudice whatsoever to the state. I believe that this court's decision, 2012 decision in Mackey v. Hoffman, disposes of several of the state's jurisdictional argument. It's clear based upon the Mackey decision that a district court can give relief from a defective notice of appeal under Civil Rule 60b-6. Which case are you citing? Mackey v. Hoffman, your honor. I cited that to the Okay. I mean, 60b deals with relief from judgment, and there's nothing wrong with the judgment here. I mean, you're appealing it, but the problem is with a notice of appeal. I understand that, but this Court did deal with an untimely notice of appeal in the Mackey case and did give relief. The only difference between that case, well, I'm not conceding that there's a difference between that case and this case. The Court can give relief from final judgments. Final judgments mean that the notice, time for filing the notice of appeal, has expired. Relief was given in that case. It was given on the basis of gross negligence on the part of counsel. I'm sorry, Mackey was a complete abandonment case, wasn't it? It was an abandonment case, but there's language in that case. And the Court said, you know, sort of distinguish it from the ordinary circumstances. Well, Your Honor, Mackey was complete abandonment, but 60 rule, Civil Rule 60b-6 is not limited to complete abandonment. Two of the Court's cases involved gross negligence, the Lowe case, and also Community Dentist versus Taney. We believe that the cumulative facts in this case indicate that this case is more than a case of simple negligence. The facts being that trial counsel in this case, at the same time that he was representing Mr. Washington, was handling 13 other capital cases and was supervising an office of 24 persons. He waited until the last day, the very last day, to file a notice of appeal, something that typically would take five minutes to do. He misread Civil Rule, or Appellate Rule 22g, and assumed that he had to file the notice of appeal and the Certificate of Appealability at the same time. He delegated a docketing to a docket clerk. He didn't check to see whether or not the docket clerk had calendared the case correctly. And once the notice of appeal was filed on the final day, he never bothered to check to see if the appeal was timely or might need corrective action under Appellate Rule 4a.5. So we maintain that this is not just a case of simple negligence. This is a comedy of errors on the part of habeas counsel and falls well within the rule of Mackey versus Hoffman. And counsel, is it your position that in a death penalty context, calculating the deadline wrong and filing a notice of appeal a day late is gross negligence rather than simple? Absolutely. Is that because it's the death penalty? Absolutely. Absolutely. I think if there are a series of, although equitable tolling is a slightly different issue, there are a series of equitable tolling cases in this court where the court recognizes that there's a different standard in measuring attorney negligence in a capital case for purposes of equitable tolling than there is in a non-capitable case. And the cases, capital case, and the cases which discuss that specifically are Miranda v. Castro and Spitzman v. Moore, which I cited in my statement of supplemental authority. I think this court certainly recognizes that when a person's life is on the line, the standards for performance of counsel and judging the performance of counsel and considering counsel's errors are somewhat different. What do I do with Stein? Stein was distinguished in Mackey versus Hoffman. Well, I don't really know whether it was. I mean, my worry about Stein is that if I can't find the distinguishing factors in Mackey, then it seems to me Stein precludes, right? Any chance? Because Stein says 60B can't be used to sidestep Rule 4. It derogates the purpose and effect of Rule 4. It says it's not enough to miss a deadline to appeal because one fails to get a timely notice of judgment. Rule 4 and Rule 77 leave no gap for 60B to fail. And so I guess if I can't find that Mackey is in any way a distinguishing factor for Stein, I'm stuck, am I not? Well, except that this court did distinguish Stein in the Mackey case. Well, I understand what they said about Stein in the Mackey case, but I know what Mackey says, too. And I guess if I can't find that this is really the extraordinary circumstances that Mackey talks about, it seems to me we are there. Well, three things, Your Honor. First of all, Stein was a lack of notice of the judgment case, which was the basis on which it was distinguished in Mackey. Well, I understand that, but that's not what the language says. It says it shouldn't be left. Rule 4 and Rule 77 leave no gap for 60B to fail. If you can't use 60B to sidestep Rule 4, we're done, aren't we? Your Honor, I guess it's my position that Rule 60B would always exist in extraordinary circumstances to prevent injustice. Rule 60B has a different statutory basis than it has an independent statutory basis, which is not restricted by the statutes that were discussed by the Supreme Court in Bowles. By its very nature, Rule 60B deals with final judgments, meaning judgments which are final because the notice of appeal time has expired or the appeal time has expired. And the Claprod case, which is the seminal case, says that 60B always exists to correct injustice. And if this isn't a case of injustice, Your Honor, I just don't know what is. Here's a case where there's substantial merits to the appeal and where somebody is going to get executed essentially for no other reason than is lawyer bungled by a single day. And I would submit if ever there was a case of extraordinary circumstances, this one is it. And that's the primary basis. Let me ask a question if I could interject. I may be oversimplifying this, but it looks to me as if Stein is not a good case for your 60B position. Stein might block it if Stein applied, but Mackey is permissive. My question is, if our panel isn't comfortable saying that Mackey controls here, is this the kind of case where there's sufficient tension between Mackey and Stein that our panel should request that an in-bank court hear this case and try to iron out the differences in the language between Mackey and Stein? Your Honor, I think this is a tough case, and I think the court's suggestion makes some sense, although I would also like to point out to the court that we do have an alternative basis for relief in this case, which is that the court could construe the motion for a certificate of appealability, which was filed one day late, as a motion to extend the time under appellate rule 4A5. I'm not really making a suggestion. I'm just asking a question and thinking out loud, because these two cases might be arguably in tension, and if they are, our panel really can't resolve the tension. Well, Your Honor, greater minds than mine would say that's something that the court would have to decide. I really can't comment on that. If we did go with your idea that the COA said nothing, or that the COA was the construed as this motion, wouldn't I still have to remand it because the district court didn't analyze whether excusable neglect or good cause would warrant the extension? Yes, and I think that would have to go back to the district court. And, Counselor, I have trouble in theory or concept with that alternative issue if it's not 60B. That is, I don't see how we can construe the request for a COA as if it were a motion under Rule 4. How do we do that if that wasn't the intent? As if counsel didn't know they were late? As I understood it, counsel didn't know the time had been miscalculated. So, when they asked for a COA, they didn't think that their appeal would be untimely. So, it's hard to think that we could construe the COA request to sort of match their intent. Well, the basis of that argument, Your Honor, is that this court, or the district court, has the discretion to construe pleadings, to do substantial justice. This court has frequently allowed a motion for COA to take the place of an untimely notice of appeal. If a motion for COA can be construed in that fashion for purposes of satisfying the time requirements of Appellate Rule 4A, it seems to me that a motion for COA could also have the same function as a motion to extend under Appellate Rule 4A-5. In either case, it seems to me that, and we know from the record in this case, that it was just one asks one thing of the district court, and the other one asks something else altogether. The COA asks the district court to certify as appealable. It doesn't say anything about time. So, if opposing counsel wants to oppose, she would not know to speak about timeliness or speak to any of those issues. Well, the purpose of construing a COA motion as a notice of appeal is it's clear from that that counsel intended to file, or usually this is the case with Pro Se defendants, intended to file a timely notice of appeal. I think we can also tell from the record in this case that counsel intended to file a timely notice of appeal by virtue of filing a timely motion for COA, and if he had known or thought to think about the problem of an untimely appeal, he certainly would have done everything within his power to file a 4A-5 motion within the 30-day safe harbor window. So, again, the principle there is the discretion of the district court or the court of appeals here to construe pleadings to do substantial justice. I'm prepared to discuss merits if the court would care to hear any discussion of the merits. The only other thing... Let me ask you another question. I mean, if in fact we were to say, well, this is too bad, it's a tough thing, then it seems to me that the alternative, which is the one you want to avoid, I guess, but the alternative is that your client's claims have already been denied on direct appeal in state post-conviction review and in the federal district court, so your best chance for relief at this particular point in time, if I think about it, it seems to me to file a successive habeas petition, arguing that his client's or his attorney's negligence in filing the untimely appeal deprived him of the statutory right to capital habeas counsel. Why shouldn't we allow that to happen? That seems to me to be where you've got to go, and what the statutes generally suggest, why not just let it go and let's see where it goes from here? Frankly, Judge Smith, I hadn't thought that one through, and I don't know that I'm prepared to answer the court's question. I guess the concern that you could... I was thinking to myself, you know, I'm not necessarily a stickler on rules. My colleagues might say, bull-loney, Randy, you really are, but the honest truth is, so I say to myself, the rules are the rules are the rules, and we get to the tough case, and I heard a little saying when I was a kid in law school, tough cases make bad law, so we eliminate the rules so what goes next? So I say to my clerk, to second-guess me, but I took him through the same thing I just took you through. Your claims have been denied on direct appeal, they've been denied on post-conviction review, and in the federal district court. Seems to me the only thing left is a successive habeas petition, which says his attorney's negligence deprived him of his statutory right to capital habeas relief. I can't come up with anything else. That's why I ask you. Your Honor, thinking about the court's question now, if the court will permit me, I think there's specific language in AEDPA which precludes an argument of ineffective assistance of capital habeas counsel. The statutory right to counsel means something in terms of whether or not my client is entitled to 6dB relief. It may mean something in terms of my client's ability to obtain relief under Appellate Rule 4A5, and I don't want to be arguing against myself if I'm ultimately in a position of having to file a successor petition, but I think I would have pretty close to an insurmountable obstacle in making a claim in a successor habeas on the basis of ineffective assistance of habeas counsel. I think it's a novel question. I don't believe there's any case law. I don't believe our panel, sitting on this appeal today, I think couldn't make a binding ruling about your right to file a second or successive. We might suggest you ought to consider that, but then when you filed it, whatever panel took it up would have to address that, which might or might not be us. I think it's this panel. It's this panel? That's what I understood. Then maybe we can't bind ourselves with DICTA, but if it would stick with our panel, I guess we could say something and there'd be a fair degree of likelihood we'd stick with our view. With it all due respect, Your Honor, I do think that this case falls under MACCIE for the multiple mistakes that counsel make and for the reason that this Court has consistently recognized a different standard for measuring the errors of counsel and the effect of the It says could, if we accept MACCIE as applicable. It simply says that this Court has discretion. Here the district court was given a chance to exercise discretion. I mean, I didn't quite get to the discretion. We'd have to send it back. I thought the district court made an alternative ruling, first, that you couldn't use 60B to get around 4A, but also alternatively said 60B wasn't satisfied. That's exactly what I thought he said. I think the district court decision was based upon the assumption that it had no jurisdiction to do anything, so the Court is correct. If this Court decides that MACCIE v. Hoffman is the governing case, then the appropriate remedy, it seems to me, would be to send it back for development on the record on the counsel's various problems precluded him from acting in a competent manner and, therefore, entitles my client to relief under 60B-6, but I would agree with the Court that the appropriate remedy is a remand, and certainly we have shown enough in terms of counsel's gross negligence, we believe, to justify a remand. The worry that I have is that, you know, you've said you come up with several things which make this gross negligence. I mean, all of these little things that happened in counsel's office or didn't happen in counsel's office all have to do with what he didn't get it done, which we've never broken all that down into each one did something bad. He just didn't get it filed on time, and I guess I'm having a tough time, other than this is a death penalty case, why I am going to intricately look into everything that may have happened into his office in order to make this different than anything else. It seems to me all that does is outline to me, again, in every other case where counsel missed the deadline, I'm going to have all this kind of stuff come up in front of me. I'm having a tough time with that. I don't even find any other case that even suggests that I go through such an analysis. Counsel missed the deadline. That's the bottom line. It's in a death penalty case. Whether this clerk missed it or that clerk missed it or counsel didn't keep the clerk going or whatever, I mean, I practiced law before. I know what we had to do, and I know there were times I was in there trying to help get out of a problem for somebody, but I'm just having a tough time understanding why, just because we can now put up all these affidavits about the many things in the office that made it so we didn't fly on time, why I should open up all that kind of litigation to every time you miss a motion, now we're going to have 411 affidavits about that. There is a discussion in community dental services, Your Honor, about the difference between ordinary negligence and gross negligence. I understand, but the bottom line is the attorney was the only one who had any duty to do something. True, but what the... He has a law office that helps him do what he has to do, and just because each one of you is negligent doesn't make his negligence any different. He had a duty to do what he had to do. Well, what the court did suggest in that case is that gross negligence is analogous to ineffective assistance of counsel under Strickland, and clearly counsel's performance, or non-performance in this case, means both elements of Strickland. He didn't act with reasonable care, and his performance is based upon the merits arguments, which I think are very substantial in this case. Merits arguments make it gross? Make it ineffective assistance. The other thing, Judge Smith, if I may, just hearkening back to why this case is different, and why you're not opening the floodgate to a bunch of counsel did this and counsel did that arguments, is not only is this a death penalty case, but this is a case where my client clearly on the merits should get relief, but for the missed deadline. I mean, this is a case where the merits arguments are extremely strong, and I'd be happy to discuss those arguments if the court would like me to, but under the circumstances I... It seems to me those merits arguments go best in the successive application for habeas relief, not here. I appreciate the court's point. I'd like to reserve the rest of my time unless you have further questions. Thank you. May it please the court. My name is Laura Chase, and I'm with the Arizona Attorney General's Office, and I represent the state of Arizona in this manner. The only issue properly before this court is whether the district court abused its discretion in denying Rule 60B relief. Even if this court decided that the district court did abuse its discretion, it would still not have jurisdiction over the underlying habeas issues, but instead would have to remand the district court for further proceedings, just as it did in Lowell and Mackey. Then why shouldn't we do that? I mean, if... I know I wrote something saying death was different in a recent death penalty case, although I was in the dissent rather than the majority, so maybe the precedential law is different than my death is different idea. But why isn't death sufficiently different so that when a lawyer negligently fails to file a notice of appeal in a case that looks facially as if there might be grounds for relief, that we should view that as gross negligence because of the death penalty context? The problem is that Rule 4A and the statute 28 U.S.C. 2107, which Congress enacted, limits this court's jurisdiction. But I'm talking about 60B. Right. And I think we have precedent saying that you can give relief under 60B if there was gross negligence, right? Referring to Mackey? Yeah. That is what Mackey says. Rule 60B is an equitable remedy, and I would argue that an equitable remedy shouldn't be used to indirectly get around the 4A requirements. But even if we look at Mackey, this is not a total abandonment case, as Mackey apparently was. We have here one mistake made by counsel. It's not a complete abandonment. Counsel continued to represent Mr. Washington all through the habeas. After the decision came out, filed a motion for reconsideration, or I believe it's a motion to alter or amend the judgment. Filed a notice of appeal. It was one day late, but that doesn't show abandonment. Even after that was filed, he continued to represent Mr. Washington. So this does not fit the total abandonment argument that Mackey certainly had. How does Pinquet fit into this? Excuse me? Pinquet? Pinquet? That was another case of a missed or a late notice of appeal because the lawyer made a mistake. And I believe... Good dissent in that case, but it wasn't dissent. Well, Pinquet was a, it, the decision in Pinquet upheld the exercise of the district court's discretion. So I think it's at the district court's discretion to decide whether or not to grant that relief. And here... So you agree that the district court would have had discretion to grant this relief? Well, I believe the district court properly determined that Rule 60B should not be used in that way. This court's opinion in Mackey... That's what I'm asking about Pinquet. Pinquet seems to suggest that it's okay to use it that way. And I'm trying to figure out if the district court is confused about that and it's not exercised discretion in light of the... My understanding of Pinquet is that there was not a Rule 60B issue, unless I'm mistaken. In that case, I believe there was a timely motion for an extension filed. So, which was granted and excusable neglect was considered within that context of whether there was excusable neglect in the failure to file the original notice of appeal. And I apologize, I don't have the case in front of me. If I'm mistaken, please correct me on that. Well, it was a motion to extend the time of filing notice of appeal after it had passed. The time had passed. And it did not, as I recall, use Rule 60B to extend the time to file that extension. So you're saying they filed the wrong motion in the district court? In this case? Yes. Well, the time had passed already in this case... To file a motion for extension. So I don't think Pinquet is applicable here because it dealt with a timely motion to extend the time to appeal. And Washington's counsel here didn't realize that the notice of appeal had been untimely filed until it was too late to file that motion for extension. As I understand, Pinquet, the motion for extension under Rule 4A-5 was filed. Is that what you're suggesting? That's my memory of Pinquet also. It was timely filed. Could I have you detour back to the merits for a minute? Why is it that the state Arizona Supreme Court said there was insufficient evidence to support the conviction of one of Washington's co-defendants, but at the same time thought there was sufficient evidence for his conviction to stand? I think the problem in Mathers, which is the co-defendant who was acquitted by the Arizona Supreme Court, I think what troubled the Supreme Court in that case was that there was evidence that Mr. Mathers had gone to Yuma with the other two defendants, but there was no further evidence placing him at the scene. The witness, the surviving witness, described a black man in his house, and Mr. Mathers was white. And the description fit the description of Mr. Washington at the time. There were two white guys and a black guy. No, Mr. Robinson and Mr. Washington were black, and Mr. Mathers was white. Correct. And Mr. Hill, the surviving victim, knew Mr. Robinson because his daughter had dated him. Sometimes she's called his common-law wife. And so he knew Mr. Robinson well, and he knew that the man he saw was not Mr. Robinson. It was another black man. Two people were in the house. He couldn't describe the second person. And so the Arizona Supreme Court, I think that troubled the Arizona Supreme Court because the two men could have been Robinson and Washington rather than Mathers and Washington. So I think that's what troubled the state Supreme Court. Here we have Mr. Washington, as I said. What do we have as to Washington being in the house? Being in the house, he, well, as I described, we know that he did go to Yuma, drive from Banning, California to Yuma with the other two defendants. We know that about Mathers, too, right? Pardon? We know that about Mathers, don't we? Correct. We know that all three of them went together. Okay, so that is not a distinguishing factor. Right. So what do we know about Washington that we don't know about Mathers? Okay. We know that Mr. Washington, when he left California that day, was seen wearing a red bandana on his head and a tan trench coat. Mr. Hill stated that he saw a young black man wearing a red bandana with a mustache and long sideburns, which Mr. Washington, that fit Mr. Washington's description at the time, and he knew the man was not Robinson. A reasonable inference is that because Washington was with Mr. Robinson, and we know Mr. Robinson was at the scene in his car, a reasonable inference is that Mr. Washington did go into the house because he fits that description. He was with Mr. Robinson. He had no other ties to Yuma, had no other reason to be there. The shotgun used to kill Mrs. Hill and to injure Mr. Hill was brought from Banning and was found abandoned in a nearby field with the tan trench coat and some rubber gloves indicating that someone, whoever shot the gun, was wearing gloves. This shows that Mr. Washington discarded his trench coat and was either carrying the shotgun and discarded it or was with the person who was carrying the shotgun and they both discarded them at the same time. Those are reasonable inferences from the evidence. Also found nearby were things taken from the Hill's home. We know that those items came from that incident. The trench coat had a slip of paper with the name of one of Mr. Robinson's sons on it. That connects it to this whole incident. Mr. Washington called his girlfriend later and told her he was stranded in California. Arizona. Yes, I'm sorry, he was stranded in Yuma and couldn't get back to California. He later took a bus back to Banning. A rational trier fact could determine that Washington was involved and I think it places Washington in the house at the time of the killing. Washington also had told Major Ogden in a post-arrest interview that Robinson told him the reason for the trip was to rob some cocaine traffickers. Even though that wasn't Mr. Robinson's actual motive, it clearly... Tell me the strongest thing you've said that is the red bandana evidence that identifies... Let's go over what there is as to that. There was a red bandana found later on... In the car. In the car. And the evidence was that that did not have any DNA, nothing. The hair on it was not from a... The expert said it was not from a black man, right? Right. There was a hair found on it that was consistent with Mr. Mathers, but not with a black man, right. So that points at least as much to Mathers as to... Well, I think it indicates that there was probably more than one red bandana in that car at some point because it could be that Mr. Mathers was in the habit of wearing red bandanas too. I think that... We don't really know, but I think another reasonable inference is that there was a... If we're looking to tie Mathers to the crime, you would say somebody saw an individual with a red bandana there, there is this red bandana found with his hair on it, right? And the only question is, you know, the witness says it was a black man, it was a white man, it could be a mistake, right? Because of the color of the... You know, the race of the person, right? I think it's more likely that that was not the same red bandana that Mr. Washington wore. Because... You sure there was no evidence that Washington was seen leaving California with a red bandana? Right. And who was that from? One of Mr. Robinson's sons. And I believe there were other witnesses who testified that they had at other times seen Washington wear a red bandana. He was in the habit of wearing one. I think... Isn't it true that what the Arizona Supreme Court seemed to be focusing on was Mr. Hill's testimony and that they really didn't have anything from Mr. Hill, who was there being shot, that really pulled Mathers in? Correct. That Mr. Hill said this was a black man, he was wearing a red bandana, and he had a mustache and sideburns, and that is what they said was bigger on Washington than it was on Mathers, as I understood it. Correct, correct. Otherwise, the trench coat you could come up with, but that really wasn't something Hill talked about, correct? I believe that's correct. I don't believe he described a trench coat. Part of the problem I've got here, although I think I requested that you take a detour on the merits, is that the merits argument really should be going to the trial court or to the district court on habeas insufficiency, or to us, to the Ninth Circuit, on an appeal about sufficiency. It doesn't directly relate to whether the appeal is timely. Correct. I'm still sort of hung up on the death is different idea and wondering, you know, why we shouldn't just tell the district court, although it's not entirely clear, that we think 60B is available in this context. So go ahead and vacate the conviction and reenter it, the judgment, so that Mr. Washington gets an appeal. Well, with respect, Judge, I think if the court did that, then the deadline that Congress has set out, the jurisdictional time for appealing, if missing the deadline and missing the time to file a motion to extend the deadline, if that alone is enough to warrant 60B relief, then the Congress's ---- And I don't think that alone is enough, but it's hard for me to look at the case in isolation without regard to what's occurred with his two co-defendants. The evidence seems so similar for him and, is it Mathers? Mathers. And I understand that it sounds like, from what Hill said, that the guy in the room standing above him or whatever was a black man, which didn't fit Mathers. But everybody knows Mathers went down there, right? Right. Went to Humana. We don't know for sure that he was in the house. We know the three went there. The three were given the death penalty initially, and two of them have skated away from the death penalty. Mathers from the whole conviction and Robinson from the death penalty, right, but not the conviction. Correct. This court reversed the death sentence. So why, in the interest of justice, to permit Washington to get his appeal on the merits? Through the vehicle of Rule 60B. Well, as I was saying, Rule 60B relief is equitable. The deadline is jurisdictional, and this court, the Supreme Court stated in Bowles v. Russell that equitable remedies were not available to extend the deadline in Rule 4A5 or the statute that Rule 4A5 is based on. And the statute needs to trump the equitable rule. The statute 2107 doesn't contain an exception for capital defendants, unfortunately. It doesn't contain an exception for this situation. It's a blanket rule, and if the rule is harsh, it's Congress that made it that way. And as I said, if missing that deadline alone is gross negligence, then the deadline means nothing, because a defendant will always be able to miss the deadline and get relief because his attorney failed to file the timely notice of appeal. Or perhaps in a future case, it will be he himself who missed that deadline. I can understand this court wanting to look at the underlying issues here. What's your view on the theory that Judge Smith tossed out for consideration that maybe you win here, that this appeal is not timely, but that we should say that because of the negligence of Washington's counsel, precluded him from having an appeal on the merits, that in the total circumstances, he should be allowed to file a second or successive petition, and then the issues could be addressed that way? Well, like Mr. Levy, I haven't examined that issue either. I think that would be one option for him if he can meet the requirements for a successive habeas petition. And off the top of my head, I can't answer whether he would be able to or not, but that would be something to look into. And I think it might also be unclear whether AEDPA would apply or not, since the original habeas petition was filed pre-AEDPA. So I don't know if the AEDPA would apply there. What about Uncertified Claim 4? I'm sorry. The claim that it was the cruel heinous, this is Claim 6, the cruel heinous and depraved aggravating factor was capriciously applied. Now that that was vacated. With regard to Mr. Robinson, it's correct. This Court found that that didn't apply. The facts with Mr. Washington are very different. This Court, what troubled this Court with the cruelty finding was that Robinson, there was no evidence putting Robinson in that house. In fact, the one thing that Mr. Hill could say is the black man I saw was not Robinson. That doesn't mean Robinson wasn't in the house. We just don't have definitive proof, definitive evidence of that. And this Court held that you can't have vicarious liability. How could it be that if there were two people in the house and there were three guys who went down to Yuma, that Mathers could be not, there's no evidence he could be in the house. So you get rid of his conviction, Arizona Supreme Court. And that there's no evidence that Robinson was in the house. Because we know two people were in the house. Right. That's like saying two people out of three were not in the house. Well, I don't think it's that. I think the State was not able to prove beyond a reasonable doubt which of the other ones was in the house. We do know beyond a reasonable doubt that Mr. Washington was in the house because he fits the description of the man that Mr. Hill saw. He was, his trench coat was, as I said, all of these show that he was in the house. The items taken from the house were found discarded near the gun and the trench coat that he had been seen wearing earlier. So we can, a reasonable juror could infer or the trial court in this case could infer that Mr. Washington was in the house and was discarding his clothing in order to not be found with it and the items that were taken. He, in Robinson's case, the court properly held that there was no vicarious liability for cruelty based on the State of Arizona's opinion in Carlson. And here, because we couldn't definitively place Mr. Robinson in the house but thought that maybe he was just outside in the car, we couldn't impute cruelty to him. Here we have cruelty. We know that Mr. Washington was in the house when the elderly victims were forced to lay face down on the floor and were tied hands and feet. And that Mrs. Robinson, we know Mr. Hill, not Mrs. Robinson, Mrs. Hill, Mrs. Hill was conscious when Mr. Hill was shot. So she could, she saw her husband get shot. She could reasonably fear for her life as she probably had been from the time they entered her house. Did she see it or just hear it? Well. I thought she was face down. She was face down but they were next to each other. You know, I know Mr. Hill said that he heard his wife ask for her feet to be covered and then he went unconscious. So we're presuming that that's when he was shot. I'm not sure if the evidence shows that she had her face turned to him or not. So she would have at least heard it. Mr. Washington participated in that entire exchange. He might not have been the one to pull the trigger but he was involved in the home invasion, in the rendering them helpless. He was the one going through the drawers in the closet. Mr. Hill testified that he was the one rummaging through drawers and closets looking for valuables. Both of them, I shouldn't say both, but Mr. Hill stated that the men kept saying, where are the drugs and the money, where are the drugs and the money? And the Hills kept telling him, we don't have it. So it was clear that they were looking for drugs and money. And Mr. and Mrs. Hill suffered during that murder. And Mrs. Hill suffered before she was killed. So I think cruelty goes to Mr. Washington where it also goes to that second person that was in the house, who the state still believes was Mr. Mathers, but we just can't definitively place him there. Excuse me, Judge? It's not Mathers. It's not Robinson. Well, we just don't know which one it was beyond a reasonable doubt. But it was my understanding the state thought it was Mathers. Did you argue in the Robinson that it was also him? Honestly, I'm not sure. I don't believe so. I read Robinson. I read Robinson. It seemed to me that the court, I mean, I'm worried. We went so far as to say we know Washington was there. That's what we said in Robinson. That's what the court said, yeah. The Ninth Circuit said that. Okay. That's what we said. We don't know whether Robinson was there. Right. That's what we said. Right. And, therefore, we reversed. Washington at least. There is evidence that the jury or the trial court could determine that he was there. Well, what we said was Washington was at least present in the Hills' home when the murder occurred. Correct. That's at 1104. Yeah. And I was going to say something, but the thought left me. So there is enough evidence of cruelty. There's enough evidence, a sufficiency of the evidence. The same evidence shows that the conviction was based on sufficient evidence. I don't know if the court would like to discuss any of the other substantive issues. It might be like a trick question for you. Okay. If we were to ask you and the appellant to write a supplemental brief on the theory that Judge Smith put on the table, that is as to whether Washington should have a right to file a second or successive petition, is there any chance that the state would say, we agree, we stipulate, he can do that so that the court can look at the merits of an appeal? I think at this point I'm not in a position to be able to say we would or would not agree, just because I haven't done the research and examined that issue. If the law came out that way, then the state would certainly abide by that law and concede that, but I think I feel uncomfortable making a statement one way or another on that. That's fair enough. And I'm not sure that that should weigh into the court's decision today. The court only has jurisdiction over the Rule 60b motion. Whatever it decides on that motion, if it decides that the motion was properly denied, then it ends there. But if it decides that the motion was not properly denied, then it will have to remand. It can't then go and look at the substantive issues and render a decision on those. And the purpose of a remand would be to tell the district court, would it be to say, yes, you can use 60b, so apply the standard, or would it be to say 60b applies and is satisfied, so vacate the judgment and reenter it, and then everybody will go from there? I believe it should be what the court did in Mackey and remand for the trial court to determine whether there was a complete abandonment of counsel. So the trial court would make that initial decision, and then whatever that was, this court could review that decision. And I would submit that I think the district court here has already held that it was not a total abandonment, that this relief is not available because it stated that the request was not grounded in external, extraordinary circumstances, not otherwise addressed by the other subsections of Rule 60b. Was I right in one of the questions I asked earlier, that I thought that the court had alternatively said 60b doesn't apply, but also that if it did apply, the standard's not met? Yeah, that's correct, and that's what I was pointing out there, yeah. The standard is not met as to abandonment, right? That's as far as the district court went. Well, the district court in this case didn't address abandonment because it didn't have Mackey for guidance. It just stated that the extraordinary circumstances requirement wasn't met. I understand. I see my time is up. Thank you. If you accept the state's argument that there's an insurmountable jurisdictional bar and that there's no residual equitable remedies for untimely appeals, then it doesn't matter if the courthouse burns down on the 60th day, if the messenger gets lost, if some other circumstance beyond the appellant's control occurs, that person is simply out of luck. Clearly, these extreme examples should indicate that in extreme circumstances, there has got to be a residual equitable remedy in the district court dealing with an untimely appeal. But that's in 4A-5. That's why 4A-5 is there. Motion for extension. If the court may extend the time. I mean, all those things you talked about there is a 4A-5 motion. It's all what you could file on a 4A-5 motion. I've been there. I know what you can file. That's what it's all about, Rule 4A-5. There are times when 4A-5 has to be used, and that's the way you get around the end of jurisdiction. You go get the district court. But I haven't got anything here that has 4A-5 on it. I haven't got anything. If the courthouse is closed for an extended period to some natural disaster and you get beyond the 30-day safe harbor window of 4A-5, then that person, through no fault of his own, is out of luck. And so there has to be a residual equitable remedy. Is there any federal decision, like a reported decision of the Supreme Court or any of the circuits or even any published federal district court that has said that 60B has that kind of residual review for? Well, there's the one, I believe, Sixth Circuit case, which I cited in the opening brief, which gave 60B relief for simple negligence in not filing a timely notice of appeal. But what I'm saying here is that there's you've got to the extent that this is an equitable remedy, you have to look at all the circumstances, including the nature of the case, this being a capital case. But the most it would get you is discretion on district court. And does the district court here exercise discretion in saying, no, you've had discretion, I refuse to reenter the judgment? I read the district court's opinion to say that it didn't have discretion. But if it did and if it did exercise discretion, my reading of the district court's opinion was that it felt that it couldn't do anything because Appellate Rule 4A was an absolute jurisdictional bar. However, to the extent that it may have exercised discretion here, given all the circumstances of the case, we believe it was an abuse of discretion. And certainly the appropriate remedy on remand would be to direct the court to vacate and reenter judgment, or at least in the alternative, consider all the facts and consider the underlying basis as the reason why counsel failed to file a timely appeal. If counsel was so overladen with his other cases that he had to wait until the final day to file the notices of appeal, it seems to me that the practical effect of that is not that much different than the types of abandonment that were considered to be an appropriate basis for relief in these other cases. I just wanted to talk briefly about the sufficiency of the evidence issues. There's two sufficiency of the evidence issues here. There's sufficiency of the evidence for the conviction, and there the single main piece of evidence putting my client in the house was the guy in the red bandana. And the testimony at trial is that they recovered hairs from the red bandana that was found in the car, and the only hairs that were found on the red bandana were comparable to the hairs of Mathers and not comparable to the hairs of Washington. So there was evidence, contrary to counsel's argument, putting Mathers in the house at the time of the murder. It's the black guy with the red bandana, right? Yeah. Mr. Hill said it's the black guy. He said the black guy in the red bandana, although the son who saw the guy come in the door, the Hill son that saw the guy come in the door, the first instance said he may have been black and he may have been white. And Mr. Hill, with all due respect, sustained a serious head injury and saw the assailants for only a few seconds and may have been mistaken, clearly could have been mistaken about the ethnic background of the assailant. Turning to the question of the sufficiency of the evidence for the death penalty, under Arizona law, in order to obtain a finding of the F5 aggravating factor, cruel, heinous, and depraved, the state would have had to show that the defendant, if not the actual shooter, intended to kill the victim and intended that the victim would suffer in order to establish a finding under the cruelty prong. Absolutely no evidence that Mr. Washington was the shooter. Absolutely no evidence that Mr. Washington knew that anyone intended to kill the victim. Absolutely no evidence that Mr. Washington intended that the victim would suffer. And in terms of whether or not Sterling Hill suffered prior to her death, there's no evidence as to who was shot first, whether it was Mr. Hill or Mrs. Hill. So zero evidence to establish Mr. Washington's liability for the death penalty, even if one assumes that there was sufficient evidence to provide a foundation for conviction of the crime. So I maintain that this is a guy that's insufficient evidence to establish his underlying guilt for the crime, clearly insufficient evidence to establish his eligibility for the death penalty, and he's going to be executed because his attorney blew the deadline by a day. If Rule 60B has any efficacy at all, this is an appropriate circumstance for it to be exercised. And for that reason, that reason alone, even if you assume that the district court had discretion, it's an absolute abuse of discretion not to grant 60B relief in this type of case. Unless the court has questions, I'm done. Have the parties tried to mediate this case? Pardon me? Have the parties tried to mediate this case? No. Do you think there's any chance of trying that? We have mediated capital cases before. Well, I would certainly welcome the suggestion and would be happy to make overtures to the Attorney General's office. I don't know that they would be interested. It never occurred to me, but certainly that's an excellent. We have a very good mediation office, including mediator here in Seattle, but certainly in San Francisco. Well, I'll make overtures. Okay, thank you. Case just argued. We'll adjourn.
judges: Kozinski, Gould, N. R. Smith